UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN RE:  VERONICA REJETTA WALLS, | Case No. 06-21228 |
| Debtor. | Chapter 13 |

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION OF THE DEBTOR'S PLAN

The debtor's Chapter 13 plan stated, in part, "Debtor will not be required to provide ½ of her income tax refunds since she has no disposable income pursuant to form 22C, but is choosing to cut back in her necessary living expenses to fund this plan."[1] The trustee objected to confirmation due to this language, arguing that the plan did not devote all of the debtor's disposable income to paying her creditors. The Court sustains the trustee's objection, and gives the debtor 30 (thirty) days from the date of this Order to file an amended plan.

I.   **FACTS**

   A.   The Form B22C

The debtor filed her Chapter 13 petition after October 17, 2005.  Accordingly, BAPCPA governs her case.  Under BAPCPA, the debtor had to file–in addition to her plan, schedules and other documents–a Form B22C Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

---

[1] While the debtor referred to "form 22C," she presumably meant to refer to Form B22C, the bankruptcy form entitled "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income."

1

This form determines how long a Chapter 13 debtor's "commitment period" should be (basically, the length of the debtor's Chapter 13 plan), whether a debtor is an above-median-income or below-median-income debtor, and, for above-median-income debtors, how much "disposable income" they have to devote to paying their creditors.

In this case, the debtor listed in Part I of Form B22C her current monthly income (the average amount of all income she received during the six-month period ending the month before the month in which she filed her petition) at $2,526.21. After making the relevant adjustments called for in Part II (annualizing her monthly income), she then compared her annual income with the median annual income for a household of five (the number in her family) in her state of residence (Wisconsin). Her annual income came out to be $30,314.52, while the median income for a family of five in Wisconsin was $70,170.00. Clearly, then, this debtor is a "below-median-income" debtor–her household income is less than half the median income for a family of her size in Wisconsin.

Part II, line 17 of Form B22C instructs debtors that if they are below-median-income debtors, they should "[c]heck the box for 'The applicable commitment period is 3 years' at the top of page 1 of this statement and complete Part VII of this statement. **Do not complete Parts III, IV, V or VI.**" Despite that instruction, the debtor in this case completed Parts III, IV and V of her Form B22C.

Parts IV, V and VI, in particular, are the portions of the form where above-

2

median-income debtors subtract their expenses to determine how much money they have available to pay unsecured creditors. For an above-median-income debtor, many of those "expenses" are pre-set, according to BAPCPA. The above-median-debtor cannot subtract his actual expenses in many categories–he must subtract pre-determined amounts laid out in the Internal Revenue Service's ("IRS") National and Local Standards. Although the debtor in this case was not an above-median-income debtor, she nonetheless went through the exercise of completing Parts IV and V of the form by subtracting from her income the IRS pre-set expenses. As a result of this exercise, the debtor's Form B22C reflected that, were the debtor to subtract the IRS National and Local Standards expenses from her income, rather than her Schedule J expenses, she would have *negative* $981.11 to devote to paying her unsecured creditors–in other words, she wouldn't be able to pay them anything at all.

B.    The Schedules

In contrast, the debtor's Schedule I showed that as of the time she filed her petition, she had income of $2,249.97 per month. (This is slightly lower than the income amount shown on her Form B22C, but that is not surprising–Form B22C shows historical income for the six months ending prior to the month of filing, while Schedule I is a snapshot of the debtor's income at the time of filing.) Her Schedule J showed actual expenses of $1,983–$1,524.32 *less* than the expense total she reached using the pre-set IRS amounts. Subtracting the debtor's Schedule J expenses from

3

her Schedule I income left her with disposable income of approximately $267 per month.

C.    The Plan

The debtor's Chapter 13 plan proposes to pay $267.67 per month (one dollar more than what she has available each month) to the trustee for a period of 60 months, with those payments to be made in bi-weekly installments of $124.00. On top of retaining a piece of secured property (a car), the plan proposes to pay a dividend of 2% to the general, non-priority, unsecured creditors. The debtor's plan–contrary to the long-standing practice in this district–proposed to allow the debtor to keep the entire amount of any tax refund she might receive during the life of the plan. It is this provision of the plan which drew objection from the trustee.

D.    Other Relevant Facts

Also relevant to the discussion are facts gleaned from the debtor's schedules and plan. The debtor is married, has three children under the age of 18, and works as a personal care worker for a non-profit organization that provides health and social services to the elderly. She earned, at the time she filed her petition, $2,020.97 per month for this work, and received $229 each month in food stamps, for a total of $2,249.97 per month in income–approximately $27,000 per year. Her schedules indicate that her expenses for her family of five total $1,983.00 per month. Schedule J lists no expense for medical or dental, no expense for recreation, and no expense for health or life insurance. She lists no auto or support

4

payments—only a monthly expense of $125 for "personal care, haircare, sundries." It certainly appears, from the debtor's Schedule J expenses, that she cuts her budget precipitously close to the bone.

According to her brief in support of confirmation, the debtor and her family have proposed to live on such a skeletal budget in order to produce enough disposable income to allow a Chapter 13 plan to succeed. The debtor needs to proceed in Chapter 13, rather than to seek a Chapter 7 discharge, because she is attempting to save a 2004 Chevrolet Classic.

In her brief in opposition to the trustee's objection to confirmation, the debtor indicates that for 2005, her federal tax refund included $2,704 for the Earned Income Credit and $1,713 in Federal Child Tax Credit. The debtor asserts that her refund for 2005 did not contain any refunded over-withholding. The debtor also indicates that she received a $706 refund from the state of Wisconsin under its Earned Income Credit. The total amount of all refunds, according to the debtor, was $5,123. She projects that she will receive refunds of similar size in the future.

II.  **ANALYSIS**

A.  Summary of the Debtor's Argument

The debtor urges the Court to overrule the trustee's objection to confirmation. Her argument in support of confirmation goes something like this:

Under BAPCPA, the debtor is a below-median-income debtor—she has a smaller household income than the Wisconsin median income for a household of

5

comparable size household. In cases where a below-median-income debtor's plan does not propose to pay a 100% dividend to the unsecured creditors, BAPCPA requires the trustee to look at that debtor's Schedule I and Schedule J–where debtors list their actual income and expenses–to determine how much money the debtor has available to pay creditors.

In contrast, in cases where an above-median-income debtor's plan does not propose to pay a 100% dividend to the unsecured creditors, BAPCPA requires the trustee to look at Form B22C to determine how much money the debtor has to pay creditors. Form B22C does not ask for the debtor's actual income. Rather, it lists her "current monthly income"–the average of the income she received during the six full months preceding the month in which she filed her petition. Nor does Form B22C ask for all of the debtor's actual expenses. It asks for actual expenses in some categories, but in others, it instructs the debtor to list as the amount of the expense the pre-set amount found in the IRS National and Local Standards. These are amounts which the IRS has presumed are reasonable for taxpayers to spend, and Form B22C asks the above-median debtor to list those amounts regardless of whether the debtor actually spends that much in those categories or not.

First, the debtor argues that if the IRS National and Local Standards amounts are reasonable for one set of debtors, they are reasonable for another. If the IRS deems it reasonable for a family of five to spend $1,042 per month on food, clothing, household supplies, personal care, and miscellaneous items, she reasons,

6

then it is reasonable for any debtor in a five-person family–be he above-median-income or below-median-income–to spend that much on those items. If the IRS deems it reasonable for a family of five to spend $254 per month for vehicle operation/public transportation expenses, then it should be reasonable for all debtors with families of five, be they above- or below-median.

Thus, the debtor argues, she should, if she wanted to, be able to reduce her disposable income by the IRS Local Standard amounts for all the relevant categories. If she did so, however, she'd be left with no disposable income at all–in fact, she'd be left almost $1,000 in the hole. Yet she needs to file a Chapter 13 (as opposed to a Chapter 7) because she wants to retain her car (probably to get back and forth to work and to transport her children). So, in order to scrape up enough money to have some disposable income for Chapter 13 purposes, she budgets for–and, presumably, lives on–much less than the amount the IRS deems reasonable.

Second, and following from the first point, the debtor argues that because she is struggling so to make a Chapter 13 plan work in order to hold on to her car, she ought to be able to keep her entire tax refund for each year of the plan. These tax refunds, she argues, are necessary to help her make ends meet in a situation in which she gets by at a subsistence level.

She supports this argument by noting that in the recent past, her refund has not resulted from over-withholding. She has not been, as some debtors do, having

Case 06-21228-pp    Doc 43    Filed 04/10/07    Page 7 of 33

more withholding than necessary taken from her check, using the withholding as a sort of savings account that she can "withdraw from" later in the form of a refund. Rather, she received a 2005 tax refund based solely on her entitlement to the Earned Income Tax Credit and the Federal Child Tax Credit.

Finally, she argues that it is particularly unfair for the trustee to take half of her tax refund each year when the trustee *does not* take half the tax refunds of another group of debtors. She points to the fact that the trustee has, post-BAPCPA, announced a policy allowing above-median-income debtors to keep their entire tax refunds. The debtor argues that she ought to be able to keep her entire refund as well—in fact, she argues, she needs hers more, because she is, after all, a below-median debtor, and is living at a subsistence level to boot. She argues that the trustee's policy of taking half of a below-median debtor's refund, while taking none of an above-median debtor's refund, is discriminatory, depriving the debtor of equal protection and due process.

B.    The Confirmation Standard

The trustee objected to confirmation of the debtor's plan. Section 1325(b)(1)(B) requires that

> [i]f the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–. . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Thus, the Court cannot confirm this debtor's plan unless the Court finds that

it provides that all of the debtor's "projected disposable income" that is "to be received" during the "commitment period beginning on the date that the first payment is due under the plan" will be applied to the plan payments. The question is whether a plan in which a debtor proposes to keep the entire amount of every income tax refund she receives for the life of the plan provides for all of that debtor's projected disposable income to be applied to the plan.

C.   Discussion

    1.   *The Court Declines to Find that the IRS National and Local Standards constitute "Amounts Reasonably Necessary to be Expended For the . . . Support of the Debtor . . . ." For All Debtors.*

Section 1325(b)(2) states that "disposable income"–the money a debtor must devote to a plan–is "current monthly income" (a term defined by the statute) *"less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ."* The first part of the debtor's argument asks the Court to make a decision about what constitutes "amounts reasonably necessary to be expended" to support a debtor and her family.

    a.   **Pre-BAPCPA procedures**

This question occupied debtors, creditors, trustees and judges long before the October 2005 implementation of BAPCPA. Before BAPCPA went into effect, all debtors, regardless of how their income compared to any median, calculated their disposable income the same way. They listed their income on Schedule I. They listed their expenses on Schedule J. They subtracted the Schedule J expenses from

9

the Schedule I income to come up with the amount of "disposable income" that they had available to pay to creditors.

The trustee had a particular role in that process. The trustee reviewed, among other things, the expenses listed on Schedule J to determine whether the expenses appeared to be "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." If a debtor listed an expense that seemed unreasonably high under the debtor's circumstances, the trustee could address that with the debtor (perhaps requesting amended schedules), or could seek guidance from the court (through an objection to confirmation, motion to dismiss, or other pleading). If the trustee thought the debtor listed an expense that was too low, such that it cast into doubt the debtor's ability to live and sustain a plan, the trustee could take similar actions.

In sum, the definition of "amounts reasonably necessary to be expended" was fluid, and depended on the circumstances of the debtors, the circumstances of the case, and the particular expenses. Some trustee's offices had guidelines for what constituted reasonable amounts for particular expenses. Many still do. But there was no statutory mandate about what dollar amount was "reasonable" for all debtors, regardless of individual circumstances.

b.      **Post-BAPCPA procedures**

Then came BAPCPA, and with it, the IRS Local and National Standards. When Congress produced the version of BAPCPA we know today, that version

10

contained what now is known as a "means test," designed to ensure that debtors who had disposable income, and presumably could afford to make some payments to their creditors (through a Chapter 13 individual reorganization), did not escape that obligation by filing a Chapter 7 discharge proceeding.[2] The "means test" divides debtors into two categories–those debtors whose income falls below the median income for a family of their size in their state, and those debtors whose income is above that median. The means test presumes that below-median debtors either have no disposable income, or have so little that it would not make sense for them to file for Chapter 13 reorganization. The means test requires those below-median debtors to calculate their disposable income the same way they did before BAPCPA–by subtracting their Schedule J expenses from their Schedule I income. And, as it was before BAPCPA, trustees can review the below-median debtors' expenses to see if they are "reasonably necessary to be expended."

For above-median-income debtors, however, the means test introduced a more rigid concept of what amounts are "reasonably necessary to be expended." Instead of leaving it to debtors, trustees and, ultimately, the courts to determine whether a particular above-median debtor's expenses are "reasonable," Congress instead adopted for these debtors the IRS's National and Local Standards. For certain categories of expenses, an above-median debtor no longer may list his actual

---

[2] For a comprehensive discussion of the legislative process that led to inclusion of the means test in the BAPCPA amendments, see Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 485 (2005).

11

expenses. Rather, he must list the expenses for a family of his size that appear in the IRS's National and Local Standards–whether he actually spends that amount or not.

### c.    The IRS National and Local Standards

On its web site, the Internal Revenue Services tells visitors the following about Local and National Standards:

> Collection Financial Standards are used to help determine a taxpayer's ability to pay a delinquent tax liability.

> Allowances for food, clothing and other items, known as the National Standards, apply nationwide except for Alaska and Hawaii, which have their own tables. Taxpayers are allowed the total National Standards amount for their family size and income level, without questioning amounts actually spent.

> Maximum allowances for housing and utilities and transportation, known as the Local Standards, vary by location. Unlike the National Standards, the taxpayer is allowed the amount actually spent or the standard, whichever is less.

http://www.irs.gov/individuals/article/0,,id=96543,00.html. With regard to the standards for food, clothing and other items, the IRS site explains, "All standards except miscellaneous are derived from the Bureau of Labor Statistics (BLS) Consumer Expenditure Survey (CES). The miscellaneous standard has been established by the IRS." Id.

Thus, the IRS has determined, through its own means and through survey data from the Bureau of Labor Statistics, that there are presumptively reasonable amounts for families to spend on food, or clothing, or housing. Perhaps Congress

12

thought those amounts reasonable, as well, because it has required above-median-income debtors to list those amounts as expenses, regardless of what they actually spend.

### d.    **The debtor's argument**

In the current case, the debtor first urges this Court to make a finding that the IRS National and Local Standards amounts are presumptively reasonable for *any* debtor, whether below-median or above-median.  The debtor asks the Court to hold that, in all cases in this district, trustees may not challenge certain types of a debtor's expenses as long as the debtor has listed the IRS National and Local Standards amounts for a family of her size in Wisconsin.

There is some allure to the debtor's argument.  The IRS does not apply its standards to only one particular group of taxpayers.  The IRS looks to these standards in determining whether *any* taxpayer should have to pay a delinquent tax.  The standards vary depending on the amount of income the taxpayer has, taking into account the fact that taxpayers with more income logically may spend more than those with less.  But the apparent assumption underlying the standards is that anyone can live on the standard amounts–not at starvation/subsistence level, and not at a lavish level, but live, nonetheless.

So, the debtor asks, if the IRS National and Local Standards amounts are "reasonable" for all taxpayers, why are they not "reasonable" for all debtors?  If the IRS–and, so it seems, Congress–have concluded that it is reasonable for a family of

13

five with a monthly income of $2,526.21 to spend $1,224 per month on food, housekeeping supplies, apparel and services, personal care products and services and miscellaneous, then why is that not reasonable for all debtors, regardless of whether their income happens to fall above or below their state's median income level?

Even if the Court were to accept this practical and persuasive argument, it does not follow that the Court must then make a finding that the IRS National and Local Standard amounts are reasonable for all debtors, period. Indeed, the debtor's request that the Court so rule is something of a red herring. The trustee in this case has not challenged the reasonableness of the debtor's expenses. There is no way to know whether, had the debtor listed the IRS National and Local Standards in her schedules (rather than on her Form B22C only), the trustee would have objected to the reasonableness of those amounts, because the debtor *did not* list those amounts in her schedules. It is not necessary or appropriate, therefore, for this Court to rule in this case on whether the IRS National and Local Standards are *per se* reasonable for all debtors.

Further, while Congress has made a determination that those standard amounts are reasonable for above-median-income debtors, it has not done so for below-median-income debtors. Its failure to do so has left the fluid, pre-BAPCPA disposable income standard in place for below-median debtors. Undoubtedly, many bankruptcy practitioners and judges hold opinions regarding whether Congress

14

should have left this standard in place for all debtors, or whether it should have created a fixed-expenses approach for all debtors. But regardless of one's opinion, the fact remains that Congress has created a different procedure for above- and below-median debtors, and this Court cannot substitute its own judgment (whatever that judgment might be) for Congress' action.

In short, therefore, while the debtor persuasively argues that what's sauce for the goose should be sauce for the gander–"reasonable" expenses should be reasonable for all debtors–it is not necessary for the Court to decide the same in this case. The Court declines to hold, as the debtor has asked, that the IRS National and Local Standards expense amounts are *per se* reasonable for all debtors.

> 2.    *The Court Declines to Find that the Debtor's Tax Refunds for the Life of the Plan Do Not Constitute Disposable Income.*

The debtor's view that the IRS National and Local Standards are "reasonable" (in the Chapter 13 sense) for all debtors plays into the next step in her argument. She next argues that she has listed, as actual expenses on her Schedule J, living expenses far below the IRS National and Local Standards amounts. Perhaps–this Court does not know–she has listed actual expenses far below what it is advisable for her family to live on. She does this by choice, she says–she is trying to reduce her expenses as much as possible to enable her to fund a Chapter 13 plan and hold on to her car, a modest 2004 Chevrolet Classic with 32,000 miles on it. (The car's value, as listed in the debtor's schedules, is $9,325.00.)

As a result of this choice she's had to make–between spending a reasonable

15

amount to support her family and drastically cutting expenses to enable her to hold

on to the car—the debtor argues that she needs her tax refunds, in their entirety,

during the life of her Chapter 13 plan in order to make ends meet. Accordingly, she

put into her plan the controversial provision allowing her to keep her refunds for the

life of the plan. This provision amounts to a determination that the debtor's refunds

during the life of the plan do not constitute "disposable income."

### a.     The nature of tax refunds

This provision is contrary to a long-standing policy in this district. Prior to

the implementation of BAPCPA, the trustee's office (and debtors) included in orders

confirming plans a provision requiring that half of any tax refund the debtor

received during the life of the plan must be paid into the plan, unless the plan

provided for 100% payment on all allowed claims. The policy appears to have been

based on case law holding that tax refunds constitute "disposable income" for

Chapter 13 purposes.

As one might suspect, during the course of a three- or five-year Chapter 13

plan, many debtors receive tax refunds. Some courts concluded, pre-BAPCPA, that

tax refunds constitute "disposable income" under §§ 1322 and 1325 when the refund

is a "repayment of overpaid taxes on income." In re Cochran, 141 B.R. 270, 272

(M.D. Ga. 1992). *See also*, In re Rhein, 73 B.R. 285, 288 (Bankr. E.D. Mich. 1987)

("Since [the debtor's] budget shows that she puts aside about $147.00 per month

into a virtual savings account through the vehicle of overwithholding of income

taxes from her wages, which savings have not been pledged to the use of the plan, the [creditor's] objection to confirmation of the plan will be sustained."); In re Red, 60 B.R. 113, 116 (Bankr. E.D. Tenn. 1986), overruled in part on other grounds *sub nom.*, In re Minor, 177 B.R. 576, 581 (Bankr. E.D. Tenn. 1995) ("This court overrules its holding in *Red* to the extent that decision may be construed as authority for the proposition that exempt income should be excluded from disposable income regardless of whether the time limitation of § 1325(b)(1)(B) or the provisions of § 1325(b)(2) apply.").

The reasoning underlying these decisions is simple. As noted by the Cochran and Rhein courts, tax refund money is money that a debtor *doesn't* owe in taxes. Thus, those courts held, a tax refund is disposable income, and has to be paid into the plan. If the trustee demands that the debtor turn over the tax refund, the debtor knows in most instances that the trustee is *not* demanding money that the debtor owes the taxing authorities. Unless that debtor can demonstrate that in his case the refund is "reasonably necessary to be expended" for his support and maintenance, he has to turn it over to the trustee. Thus, tax refunds resulting from overwithholding generally constitute disposable income, and must be devoted to the plan unless it pays the creditors 100%.[3]

---

[3] The Eastern District of Wisconsin policy that the debtor submit to the trustee only one-half of the refund, and not the full amount, is a creature of local custom. It has been around as long as the memory of many practitioners. One may characterize it as generous or practical. It encourages debtors to set withholding amounts sufficient to pay their taxes in full and perhaps provide something extra to spend, albeit only half of any excess they set aside.

b.     **The debtor's need for the refunds**

The debtor does not argue that tax refunds do not constitute "disposable income." It does not appear to this Court that BAPCPA changed the fact that courts treat tax refunds as disposable income–indeed, one can argue that BAPCPA actually supports that treatment. *See* <u>In re Balcerowski</u>, 353 B.R. 581 (Bankr. E.D. Wis. 2006).

Rather, the debtor argues that her particular circumstances render the money from her tax refunds "reasonably necessary to be expended" for her support and maintenance and that of her family. The particular circumstances to which she refers are her status as person with a relatively small household income–approximately $30,000 a year–for a family of her size–five people, and the fact that her need for her car is so great that she has drastically reduced her family's living expenses to be able to finance a Chapter 13 plan.

It is true that the debtor has a low household income for a family her size. Although the income reflected on her Form B22C means test form exceeds the 2006 poverty threshold for a family of five with three children under the age of 18, it does so by only a few thousand dollars. The fact that, as pointed out in the facts, she received a tax refund because she qualified for the Earned Income Tax Credit and the Federal Child Tax Credit demonstrates that the debtor falls into that category of people the federal taxing authorities consider to be "low-income." Based on the debtor's schedules and other forms, and the representations of her counsel, the

18

Court has no doubt that the debtor's ability to make ends meet would be greatly enhanced if she could use the entire amount of any tax refund she receives in the next several years to support her family.

Further, it appears to the Court that the debtor has shaved her family expenses quite close to the bone. Her Schedule J shows expenses of only $920 for food, clothing, household supplies and other items. Making the comparison she urges the Court to make to the IRS National and Local Standards, this is some $300 per month less than the IRS finds reasonable. She lists only $595 for housing, electricity and telephone, while the IRS standards allow a family of her size in Milwaukee County to spend $1,426 on those needs. As discussed in the facts, she lists no expense for medical and dental expenses (in spite of having three children under the age of 18), and no health or life insurance expenses. Again, these facts support an argument that this particular debtor could greatly benefit from the use of her entire tax refund, at least as of the time she filed her petition.

c. **The problem with the debtor's plan language**

The problem, however, is not that the debtor plausibly can argue that her tax refunds constitute amounts "reasonably necessary to be expended" for her family's support. The problem lies with the method the debtor chose to make this argument. Rather than waiting until she learned whether she would receive a tax refund, and then arguing to the trustee (and, if necessary, the Court) that her circumstances for that year rendered the refund amount "reasonably necessary to be expended," the

19

debtor simply plugged a provision into the plan that allowed her to keep all of her tax refunds for the life of the plan.

The problem with putting language into the plan allowing the debtor to keep the entire amount of any tax refund she receives in the plan's life is that it ignores the law and the realities of changing circumstances. The law, as discussed above, says that tax refunds constitute disposable income unless the debtor can demonstrate that the refunds are "reasonably necessary to be expended." The debtor has to demonstrate that the refund is "reasonably necessary to be expended" in order to take the refund out of the disposable income classification. The debtor's ability to make such a showing may differ each year. This year, she may be able to demonstrate reasonable necessity. Next year, however, her husband might get work. She might get a higher-paying job. One of her children might obtain paid employment. Someone in the family might receive some other form of income–inheritance, or a legal settlement. In those cases, the refund may not be reasonably necessary for support, and thus would have to be committed to the plan.

The more appropriate method for the debtor to use in addressing this problem is to approach the trustee when it appears that a refund will be forthcoming. If the trustee agrees that, under the circumstances for that year, the refund is "reasonably necessary" for the support of the debtor's family, she will allow the debtor to retain all of the refund. If the trustee does not agree, the debtor always has the option of asking the Court to determine that the refund is

20

"reasonably necessary." But a blanket provision stating that, under all of the circumstances that might arise over the years of the plan's life, any tax refunds will not be deemed "disposable income," is too broad a solution for the debtor's problem.

Further, the particular language that the debtor used in this case flies in the face both of BAPCPA and Form B22C. The language in the plan says that the debtor would be allowed to keep the full refunds "since she has no disposable income pursuant to form 22C, but is choosing to cut back in her necessary living expenses to fund this plan." As discussed above, Congress provided only that above-median-income debtors could deduct the IRS National and Local Standard amounts, rather than their actual expenses. This is why Form B22C tells debtors that if they determine, after completing Parts I and II of the form, that they are below-median-income debtors, they should not go on to complete Parts III-VI–the parts where above-median debtors subtract out the IRS standard expenses for some categories and their actual expenses for others.

This debtor, for the reasons she discussed in the first part of her argument, defied the statute and the instructions on the Form B22C, and calculated her "disposable income" using the IRS standards. The result of this calculation was that Part V of Form B22C, Line 58, showed that she had a *negative* $981.11 per month in disposable income. While the Court understands that this is the amount of disposable income the debtor would have had if she had had actual expenses equal to the IRS standard amounts, she *didn't* have actual expenses equal to those

21

amounts. Her Schedules I and J show expenses much lower, and the statute dictates that as a below-median-income debtor, she must use *those* amounts to calculate her disposable income. Neither the statute nor the form which purports to implement the statute allow her to represent that she has negative disposable income by using the IRS standard amounts as expenses.

Indeed, the fact that the debtor's Schedules I and J show that she has $266.97 per month in disposable income is, as she has told the Court, her choice. She could have presented a less frugal budget (perhaps a more realistic budget, even), and thus showed less disposable income, had that been her goal. And perhaps the trustee would have had no objection to that budget (although this likely would have yielded an objection to the feasibility of the plan). But the debtor has chosen (admittedly for good reason) to present a frugal budget in order to fund a plan. She cannot eat her cake and still have it—she cannot choose to reduce her budget in order to fund a plan, but argue that because her budget should have been higher, her tax refunds should not constitute disposable income.

### d. The likely sources of any future refunds

The Court should address one other prong of the debtor's argument, and that is her implication that because her 2005 tax refund was generated by the Earned Income Tax Credit and the Federal Child Tax Credit, rather than by over-withholding, any future refunds generated in the same way somehow should be treated differently than refunds that result from over-withholding. The Court

concludes that this argument does not work to rescue her plan.[4]

             i.      Definition of the Earned Income Tax Credit and the Federal Child Tax Credit

In Dickerson v. Manchester, 227 B.R. 742, 745 (B.A.P. 10th Cir. 1998), the Tenth Circuit Bankruptcy Appellate Panels described the Earned Income Tax Credit as follows:

> Under 26 U.S.C. § 32, an "eligible individual" shall be allowed a credit against his or her income taxes equal to the credit percentage of so much of the individual's "earned income for the taxable year as does not exceed the earned income amount." 26 U.S.C. § 32(a); *see id.* at § 32(c) (defining "eligible individual" and "earned income"). This credit is general known as an "earned income credit."

In In re Goertz, the bankruptcy court for the Western District of Missouri elaborated:

> An earned income credit . . . is a refundable tax credit provided for low income workers who have dependent children and who maintain a household. *In the Matter of Davis*, 136 B.R. 203, 205 (Bankr. S.D. Iowa 1991). Courts have characterized the earned income credit as 'an item of social welfare legislation' effectuated through income tax laws. *Hoffman v. Searles*, 445 F. Supp. 749, 753 (D. Conn. 1978); *In re Brown*, 186 B.R. 224, 226 (Bankr. W.D. Ky. 1995); *Davis*, 136 B.R. at 205.

In re Goertz, 202 B.R. 614, 616 (Bankr. W.D. Mo. 1996).

---

[4] On page 3 of her objection to confirmation, the trustee argues that "[s]hould the debtor not wish to make a large lump-sum payment each year to the Trustee from her tax refunds, she has the option of reducing her withholding so that she does not receive a tax refund. The Debtor should therefore reduce her withholding deduction on Schedule I if she refuses to pay half of her refunds into the plan." Obviously, this argument assumes that the debtor stands to receive a refund because she has over-withheld. The argument is not persuasive in situations where debtors receive refunds solely because of programs such as the EITC or the FCTC.

23

With regard to the Federal Child Tax Credit, § 24 of the tax code "provides for a credit for each of a taxpayer's dependent children under the age of seventeen." <u>In re Koch</u>, 299 B.R. 523, 525 (Bankr. C.D. Ill. 2003); 26 U.S.C. § 24.

> The FCTC is codified under Subpart A (Nonrefundable Personal Credits) of Subtitle A (Income Taxes) of the Internal Revenue Code. Generally, this means that the FCTC is only available to reduce tax liability and is non-refundable if no taxes are owed. Subsection § 24(d), however, allows a family with three or more children to receive a refundable FCTC in some circumstances, even if no taxes are owed. This additional credit is the lesser of (1) the unused portion of the child tax credit allowed under 26 U.S.C. § 24(a) or (2) approximately the difference between the taxpayer's portion of payroll taxes and the allowed EITC.

<u>In re Beltz</u>, 263 B.R. 525, 528 (Bankr. W.D. Ky. 2001).

On the one hand, then, refunds which arise due to the EITC and the Federal Child Tax Credit are not the result of debtors using withholding tax as a savings vehicle. Debtors cannot manipulate their disposable income through EITC and FCTC refunds. Rather, such debtors receive these refunds precisely because they have such small amounts of taxable income to begin with. On the other hand, these refunds are amounts that taxpayers receive that are not required to be devoted to paying a tax liability. In fact, the United States Supreme Court has directly addressed the character of an Earned Income Tax Credit refund as compared to that of an over-withholding refund in <u>Sorenson v. Sec'y of the Treasury</u>:

> Unlike certain other [tax] credits, which can be used only to off-set tax that would otherwise be owed, the earned-income credit is "refundable." Thus, if an individual's earned-income credit exceeds his tax liability, the excess amount is "considered an overpayment" of tax

24

under § 6401(b), as it then read, of the 1954 Code.  Subject to specified setoffs, § 6402(a) directs the Secretary to credit or refund "any overpayment" to a person who made it.  An individual who is entitled to an earned-income credit that exceeds the amount of tax he owes thereby receives the difference as if he had overpaid his tax in that amount.

<u>Sorenson v. Sec'y of the Treasury</u>, 475 U.S. 851, 854-855 (1986).

              ii.     Earned Income Tax Credit and Federal Child Tax Credit refunds and their intersection with the Bankruptcy Code

The character of EITC and FCTC refunds has arisen in the bankruptcy context in the area of exemptions.  Section 522 of the Bankruptcy Code, of course, allows a debtor to "exempt" from the property of the estate certain specified assets.  The exemptions allowed in § 522 are the Code's way of recognizing that a debtor should not have to give up every single item he owns to obtain bankruptcy relief–he should be able to retain a reasonable residence, a reasonable vehicle, and certain other assets.

Section 522(d)(10)(A) allows a debtor to exempt his "right to receive" certain types of support benefits, including social security, unemployment compensation, or "a local public assistance benefit."  There are a number of states whose exemptions also include an exemption for "public assistance benefits," and this fact has given rise to a series of cases discussing what constitutes "public assistance."  In that context, courts have had occasion to consider whether the Earned Income Tax Credit and the Federal Child Tax Credit constitute "public assistance."  *See* Willam L. Norton, Jr. *et al.*, Norton Bankruptcy Law and Practice § 46.17 (2d ed. 2005).

25

Some courts have held that debtors may exempt the EITC.  *See* <u>Flanery v.</u> <u>Mathison</u>, 289 B.R. 624 (Bankr. W.D. Ky. 2003); <u>In re Brasher</u>, 253 B.R. 484 (Bankr. M.D. Ala. 2000); <u>In re Tomczyk</u>, 295 B.R. 894 (Bankr. D. Minn. 2003). Others have held just the opposite.  *See* <u>In re Demars</u>, 279 B.R. 548 (Bankr. W.D. Mo. 2002); <u>In re Sohn</u>, 300 B.R. 332 (Bankr. D. Minn. 2003).  A number of courts have found that debtors could not exempt Federal Child Tax Credits.  *See* <u>In re</u> <u>Koch</u>, 299 B.R. 523 (Bankr. C.D. Ill. 2003); <u>In re Beltz</u>, 263 B.R. 525 (Bankr. W.D. Ky. 2001); <u>In re Steinmetz</u>, 261 B.R. 32 (Bankr. D. Idaho 2001); <u>In re Dever</u>, 250 B.R. 701 (Bankr. D. Idaho 2000).

### iii.    The debtor's argument

In the current case, the debtor has not sought to exempt any portion of a tax refund.  Her Schedule C does not list any form of public assistance as exempt property.  Nor does she argue that the reason her tax refunds over the plan's lifetime should not be treated as disposable income is because all or some of those refunds will be exempt.

Even if the debtor were to argue that all or part of the refunds she may receive over the life of the plan would constitute exempt property, and even were the Court to accept that argument, it would not necessarily follow that the exempt portions of such refunds would not constitute disposable income.  Several bankruptcy courts in the Seventh Circuit have held that a debtor can be required to include exempt property as disposable income. *See, e.g.*, <u>In re Lush</u>, 213 B.R. 152

26

(Bankr. C.D. Ill. 1997) (proceeds of debtors' workers' compensation claim, while exempt under state law, had to be applied to the Chapter 13 plan to satisfy the disposable income test); In re Schnabel, 153 B.R. 809 (Bankr. N.D. Ill. 1993) (debtor's Social Security and pension income, while exempt under state law, had to be devoted to Chapter 13 plan to satisfy the disposable income test); Watters v. McRoberts, 167 B.R. 146 (Bankr. S.D. Ill. 1989) (full amount of debtor's personal injury recovery, while exempt, had to be devoted to satisfy the disposable income test).[5]

In In re Sohn, 300 B.R. 332 (Bankr. D. Minn. 2003), the Minnesota bankruptcy court specifically found that a tax refund resulting from the EITC, even if exempt, constituted disposable income. In Sohn, the Chapter 13 trustee objected to confirmation of the debtor's plan, because the debtor failed to include his tax refunds in his disposable income calculations. The trustee argued that even if a tax refund were exempt, it still must be included in the calculation of a debtor's disposable income. Id. at 334.

The debtor responded that because his refunds resulted from the EITC and certain state child credits, the refunds "[did] not truly constitute a tax refund, [were]

---

[5] Indeed, numerous courts have found that all sorts of assets that have been deemed exempt nonetheless constitute disposable income. See, e.g., In re Jackson, 173 B.R. 168 (Bankr. E.D. Mo. 1994) (workman's compensation); In re Hagel, 171 B.R. 686 (Bankr. D. Montana 1994) (Social Security disability benefits); In re Rogers, 168 B.R. 806 (Bankr. M.D. Ga. 1993) (Naval retirement benefits); In re Morse, 164 B.R. 651 (Bankr. E.D. Wash. 1994) (Social Security benefits, Army pension and National Guard pension).

27

not derived from excess income withheld, and [were] in the nature of income supplements or credits designed specifically for the maintenance and support of the debtor and his dependents." Id. at 334. The debtor argued that "the inherent nature of such credits [was] of supplemental support, in essence a legislative declaration that such credits are reasonable and necessary for purposes of sustaining the recipient's existence and to alleviate the financial burdens of raising children." Id.[6]

The bankruptcy court disagreed with the debtor's analysis. The court concluded,

> . . . There is no authority by which to allocate more significance to certain sources of revenue collected during the life of the plan over others, no super-exempt quality to label such supplemental income program payments. According to the Eighth Circuit in [*Stuart v.* *Koch*[, 109 F.3d 1285 (8th Cir. 1997)]], any kind of post-petition income, exempt or not, is nevertheless income for purposes of calculating therefrom how much of it is disposable and must fund the plan: "[E]xempt income not reasonably needed for support then [became] 'disposable income' that *must* be paid to creditors." *Id.* Only the reasonable and necessary expenses required in order to maintain a basic-needs lifestyle are allowed when the relief of Chapter 13 is granted, and therefore what income remains after that must be deemed disposable.

Id. at 337.

Thus, the fact that this debtor's tax refunds, if she gets any, may result from the application of the EITC and the FCTC, rather than from over-withholding, does

---

[6] The Sohn debtor conceded that a tax refund derived from excess withholding constituted disposable income for Chapter 13 purposes, regardless of its exempt status. Id. at 335 n.3.

28

not necessarily take those refunds out of the realm of disposable income even if they are exempt. Accordingly, the only significance this Court can attribute to the fact that the debtor's 2005 refund resulted from the EITC and FCTC is its demonstration of the debtor's low-income status. And, as discussed above, while that low-income status may very well mean that the debtor's future tax refunds will be reasonably necessary for the support of her family, the appropriate method for her to utilize in making that argument is a motion to the Court, not a blanket refund exception in her plan.

3. *The Court Declines to Rule On The Disparity Between The Trustee's Demand for Half the Tax Refunds of Below-Median-Income Debtors and Her Lack of Such a Demand for Above-Median-Income Debtors.*

As discussed above, in the pre-BAPCPA days, the trustees in this district took half of the tax refunds of all debtors. Post-BAPCPA, it appears that at the trustee has changed that policy. The trustee does not mention the new policy in her objection in this case. In an objection to confirmation filed in another case, however, the trustee stated:

> Since Congress, through BAPCPA, crafted a formula approach to determining an above median income debtor's disposable income, some [above-median] income debtors argue that the Trustee cannot require them to pay one-half of their tax refunds to the Trustee during each year their case is pending. The Trustee agrees with this position and does not intend to pursue collection of one-half of tax refunds from such debtors. This, however, increases the importance of ensuring that a debtor's tax deduction in the disposable income computation is properly stated.

In re Balcerowski, 353 B.R. 581 (Bankr. E.D. Wis. 2006), docket no. 06-21695,

Case 06-21228-pp    Doc 43    Filed 04/10/07    Page 29 of 33

Trustee's Objection to Confirmation at p. 3. The debtor argues that this policy, in which "high income debtors are allowed to keep their entire tax refund, while low income debtors are forced to send one half of their tax refund (including EIC) to the Trustee)," denies the debtor equal protection and due process.

The trustee's objection in this case does not mention the new policy, and the objection in the <u>Balcerowski</u> matter justifies the new policy only by indicating that the policy change is due to BAPCPA's "formula approach" for calculating disposable income. Presumably this means the trustee has concluded that, because above-median-income debtors must list particular dollar figures as their expenses in certain categories, rather than listing their actual expenses, the trustee has decided not to demand one-half of above-median-income debtors' tax refunds.

It is not clear to the Court why this should be. The implication of new policy is that by requiring above-median-income debtors to list the IRS standard amounts as their expenses, Congress has limited the amounts that those debtors can spend on certain categories of items. The further implication is that this limitation works a hardship on those debtors, forcing them to spend less than they need to for those categories of items. The final implication is that, because the above-median-income debtors are forced to spend less than they need to on certain fundamental living expenses, they need their full tax refunds to be able to sustain themselves.

If this is, indeed, the justification behind the trustee's decision not to pursue half the tax refunds of above-median-income debtors, it appears to the Court to be a flawed justification. First, it assumes that the IRS standard expenses are less than

30

what above-median-income debtors actually need to live on. It is not clear that this is true. As discussed above, the IRS has presumed that those amounts are "reasonable" for taxpayers of all stripes. Congress, in adopting those standards for above-median-income debtors, appears to have concluded that the amounts were reasonable, as well. While certainly it is true that the IRS standard amounts will be less than some above-median-income debtors are accustomed to pay for food, clothing, and housing, that does not mean that living on those amounts will create hardships for the debtors. Indeed, there are likely above-median-income debtors who spend *less* than the IRS standard amounts, and for those debtors, BAPCPA's requirement that they list the standard amounts to determine disposable income will yield a windfall.

Second, the justification falls prey to the same faulty reasoning that the debtor employed in her effort to avoid turning over half of her tax refunds. It assumes, across the board, that any above-median-income debtor's tax refund will be "reasonably necessary to be expended" for that debtor, without looking at the circumstances from debtor to debtor or from year to year during the life of the plan. Just as the debtor in this case cannot obtain a blanket determination of reasonable necessity for the next several years through the language she inserted into her plan (to which the trustee objects), the above-median-income debtor should not be able to obtain a blanket determination of reasonable necessity by virtue of the trustee's policy.

Third, it is likely that most above-median-income debtors will have tax

31

refunds during the life of their plans–not because they qualify for the EITC, the FCTC, or similar programs, but because they have over-withheld from their paychecks. Debtors in post-BAPCPA Chapter 13s face particular difficulties if they over-withhold. This Court has held in <u>In re Balcerowski</u>, 353 B.R. 581 (Bankr. E.D. Wis. 2006) that when calculating his disposable income, an above-median-income debtor must subtract as a tax expense his actual tax expense, not the amount he has withheld from his paycheck. That being the case, if an above-median-income debtor subtracts his actual tax expense to determine his disposable income, but then over-withholds, he will not have available to him sufficient funds to pay his creditors the amount of disposable income his Form B22C indicates that he has available.

Above-median-income debtors, then, should not routinely over-withhold. Yet the trustee's new policy seems to assume that they will, and that if they do, they can retain the entire amount they over-withheld and not devote it to paying creditors. This does not seem to comport with what many assume to be the goal of the means test, or with the case law.

The debtor maintains that the new policy is not only unfair, but that it violates equal protection and due process. This Court is reluctant to make a decision on the constitutionality of the trustee's policy unless it is absolutely necessary. In this case, such a determination is not absolutely necessary. If, indeed, the trustee's policy violates any provision of the Constitution, the remedy for that violation likely would not be to allow below-median-income debtors to retain

32

their entire tax refunds. Rather, it likely would be to require the trustee to pursue one-half of the tax refunds due above-median-income debtors. There may come a time when an enterprising creditor objects to confirmation of an above-median-income debtor's plan because it does not devote one-half of that debtor's tax refunds to the plan. At that time, some court may have to determine whether the trustee's policy violates constitutional standards. That time has not come in this case.

III.  **CONCLUSION**

This debtor's financial situation is very difficult. One can hardly blame her for seeking to find a way to hold on to a bit more money to support her family. The Court finds only that the method that she chose to do so–that of putting a blanket exception for the payment of half the tax refunds into her plan–is not the appropriate method of resolving her problem. For that reason, the Court hereby SUSTAINS the trustee's objection to confirmation of the debtor's Chapter 13 plan. The Court will allow the debtor a period of thirty (30) days from the date of this Order to submit a modified plan.

SO ORDERED this ___10th___ day of April, 2007.

HON. PAMELA PEPPER
United States Bankruptcy Court

33